IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Brief November 10, 2009

## STATE OF TENNESSEE v. WILLIE LEWIS

### Direct Appeal from the Criminal Court for Shelby County
### No. 08-01047     Chris Craft, Judge

### No. W2008-02636-CCA-R3-CD  - Filed March 31, 2010

A Shelby County jury convicted the Defendant, Willie Lewis, of aggravated robbery.  The trial court sentenced the Defendant as a career offender to thirty years in the Tennessee Department of Correction ("TDOC").  On appeal, the Defendant contends:  (1) the evidence is insufficient to sustain his conviction; and (2) the trial court erred when it imposed an excessive sentence.  After a thorough review of the record and applicable authorities, we affirm the trial court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Dianne Thackery (at trial), Memphis, Tennessee, and Phyllis Aluko (on appeal), Memphis, Tennessee, for the Appellant, Willie Lewis.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Lacy Wilber, Assistant Attorney General; William L. Gibbons, District Attorney General; Colin Campbell, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

A Shelby County grand jury indicted the Defendant on one count of aggravated robbery.  At the trial on this charge, the following evidence was presented: The victim, Sims Wesby, Jr., testified that he arrived home on June 8, 2007, around 4:30 or 5:00 p.m.  After

parking his truck, he walked to the house next door to talk with his friend "Sherry," who was sitting on the front porch. The two had spoken for a few minutes when the Defendant approached the victim. The victim described the Defendant as a black male who was approximately six feet tall, wearing blue jeans and a blue windbreaker with the hood pulled up over his baseball hat.

The victim testified that he recognized the Defendant because the Defendant lived in the same neighborhood as the victim for the past twenty years. The victim recalled that the Defendant approached the victim and pulled a double-barrelled, sawed off shot-gun out of a bag and demanded the victim's money. At first, the victim thought the Defendant was joking, but the Defendant then fired a shot into the ground and again pointed the gun at the victim. The victim testified that he was nervous and began to look for something with which to defend himself, but he could find nothing. The Defendant hit the victim on the head with the gun twice, splitting open the victim's head, and the victim, feeling he had no other choice, grabbed the Defendant. The two "scuffled," but the victim was unable to take the Defendant's gun. The Defendant took the victim's wallet, which contained $240, and walked down the street.

The victim testified that, due to his injuries, an ambulance transported him to the hospital. While in the ambulance, the victim saw the Defendant walk out from behind a building, near the victim's home. The victim pointed the Defendant out to the paramedics, who then parked the ambulance and placed a call for police assistance. The police brought the Defendant to the back of the ambulance, and the victim identified the Defendant as the perpetrator.

On cross-examination, the victim testified that Sherry left after the Defendant pulled the gun out of the bag. The victim said that he received stitches for his injuries at the hospital and that his wallet was never recovered.

Officer Reginald Walker, with the Memphis Police Department, testified that he responded to a robbery report where he found the victim bleeding due to head injuries. Paramedics arrived and transported the victim to the hospital. Officer Walker said that the ambulance stopped at the corner of Bellevue and Smith, called the police, and reported that the victim indicated that the Defendant was on the corner of the street. Officer Watson drove to the intersection and, after speaking with the victim, detained the Defendant. Officer Watson recalled that he brought the Defendant over to the back of the ambulance, and the victim identified the Defendant as the perpetrator. Officer Walker testified that he transported the Defendant to jail and turned in a blue jacket that was recovered from the scene.

On cross-examination, Officer Walker testified about the information the victim provided at the scene, which was consistent with the victim's trial testimony.

Sergeant Elaine Shelby, with the Shelby County Sheriff's Office, testified that she took a DNA sample from the Defendant and sent it to the Tennessee Bureau of Investigation ("TBI"). She also tried to locate "Sherry," but she was unsuccessful.

William Mattix testified that he was employed as a fire fighter/paramedic for the Memphis Fire Department in June 2007 and responded to a robbery report. Mattix recalled that the victim, who was standing outside, had a large bump on his head. Mattix observed that the bump was about the size of a baseball, and Mattix also saw lacerations on the victim's head. Mattix assessed the injuries and determined the victim needed to go to the hospital. They had not driven far when the victim screamed, "[T]hat's the man who hit me." Mattix notified police officers who detained the Defendant.

Donna Nelson, a Special Agent Forensic Scientist with the TBI, testified as an expert witness in the field of forensic science. Nelson created a DNA profile for the Defendant from a sample of his saliva, and she created a DNA profile of the material from a stain on a jacket recovered at the scene. She concluded that the DNA profile of the stain on the jacket did not match the Defendant's DNA profile. Nelson also took a "cutting" from the neck and wrist areas of the jacket for analysis. Nelson was able to get a partial DNA profile indicating a male, but she could make no further determination because the neck and wrist areas contained insufficient material to construct a full DNA profile. Nelson explained that a sample could be degraded from exposure to sunlight or other elements, such as dirt.

Patrick Jones testified that he was, at the time of trial, incarcerated and had convictions for four counts of aggravated burglary and theft. In June 2007, however, he lived down the street from the victim. Jones said that he had known the victim for about eight years and dated the victim's sister. Jones recalled that on the day of attack in this case, he was sitting in his living room watching television. From this position, Jones could look through the front window and see people coming and going on the street. Jones recalled that he heard a loud boom, so he stepped out on his porch. Seeing nothing, he guessed the boom had been caused by a truck backfiring and returned inside. Jones said an ambulance came down the street a few minutes later, so he again went out onto his porch. He saw that the ambulance stopped in front of the victim's house, so Jones walked down to the victim's house and watched as they carried the victim out of his house and loaded him into the ambulance.

Jones recalled that he saw the Defendant with yard tools in his hand earlier in the day. Jones said that the Defendant went to the store that was on the corner and was drinking beer

-3-

with some other people. After Jones heard the boom and went out on the porch, he saw the Defendant was still down at the corner drinking beer. Jones recognized the Defendant because he had known him for about twenty-five years.

Jones conceded that he never told police that the Defendant was at the corner and, thus, could not have committed the robbery but explained that, based on his experience with police, he thought it better not to get involved. Although he did not tell police, Jones said that he told the victim's sister and the victim, and, when he did so, the victim said, "[Y]a'll had something to do with it. [Y]a'll get out of my yard."

The Defendant testified that he had prior convictions for two counts of theft and attempted aggravated burglary. The Defendant stated that on June 8, 2007, he got off work at Memphis Auto Parts at noon and went to a friend's house on Bellevue to trim his hedges. When he finished with the hedges, he went to the store for Ms. Tipton. By this time it was almost 2:30 or 3:00 p.m. The Defendant said he then went to the corner store at Bellevue and drank and talked with friends. The Defendant denied seeing or robbing the victim.

On cross-examination, the Defendant testified that he heard the same loud boom that Jones heard and that he looked down the street but did not see anything. Shortly thereafter, he saw the ambulance stop across the street, and the police took him into custody. The Defendant denied ever being taken to the back of the ambulance for the victim to identify him. The Defendant also denied ownership of the jacket recovered at the scene.

Based upon this evidence, the jury convicted the Defendant of aggravated robbery. At the Defendant's sentencing hearing, the State entered seven judgment forms through the Shelby County Criminal Court Deputy Court Clerk as evidence of prior felony convictions for purposes of determining the Defendant's range. The trial court considered five of the prior convictions, which were classified as Class B felonies, when it sentenced the Defendant as a Career Offender. The trial court sentenced the Defendant as a Career Offender to thirty years in the TDOC. It is from this judgment that the Defendant now appeals.

## II. Analysis

The Defendant presents two issues for review: (1) whether there was sufficient evidence to sustain his conviction for aggravated robbery; and (2) whether the trial court erred when it categorized the Defendant as a Career Offender.

### A. Sufficiency of the Evidence

When an accused challenges the sufficiency of the evidence, this Court's standard of

review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). A conviction may be based entirely on circumstantial evidence where the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty

verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

The Defendant in this case was convicted of aggravated robbery, which requires a jury to find beyond a reasonable doubt that the Defendant either knowingly or intentionally committed theft of property, either by violence or by putting the victim in fear and accomplished this with: (a) a deadly weapon, (b) display of an article that lead the victim to reasonably believe it was a deadly weapon, or (c) by causing serious bodily injury to the victim. T.C.A §§ 39-13-401 and -402 (2006).

The Defendant contends that the evidence supporting his identity as the perpetrator was insufficient for a rational trier of fact to find he was guilty beyond a reasonable doubt of aggravated robbery. The State responds that the victim's identification of the Defendant as the person who robbed him at gunpoint is sufficient evidence that the Defendant committed this crime.

The evidence, considered in the light most favorable to the State, proves that the Defendant was present at the scene of the crime. The victim was standing in his neighbor's front yard when the Defendant approached with a gun and demanded the victim's money. The victim knew and recognized the Defendant because they had lived in the same neighborhood for twenty years. When the victim did not respond, the Defendant fired the gun into the ground near the victim and hit the victim twice in the head with the gun. A struggle ensued between the two, with the Defendant ultimately taking the victim's wallet that contained $240 and leaving the scene. As the victim was being transported to the hospital, he saw the Defendant near the scene of the robbery and identified the Defendant to the paramedics. Police detained the Defendant and the victim again identified the Defendant as the perpetrator.

The Defendant asserts that the victim's identification of the Defendant, alone, was insufficient to sustain his conviction. We disagree. First, it is well established that the identity of the Defendant as the perpetrator of the crime is a question of fact, which is determined by the jury. State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982) (citations omitted). This Court has also held that victim testimony alone is sufficient to support a conviction, and, in this case, the victim identified the Defendant as the perpetrator of the aggravated robbery. See, State v. Williams, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981). Thus, we conclude that the Defendant is not entitled to relief on this issue.

## B. Sentencing

When a defendant challenges the length, range, or manner of service of a sentence,

this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2006). The burden is on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts (2006). This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration and proper weight to the factors and principles relevant to sentencing under the Sentencing Act, Tennessee Code Annotated section 40-35-103 (2006), the appellate court may not disturb the sentence even if a different result was preferred. *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

In conducting a de novo review of a sentence, we must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 4-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2006); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). We must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2006).

### A. State's Notice of Enhanced Punishment

The Defendant contends that the trial court erred when it categorized him as a Career Offender because the State failed to give adequate notice that the State intended to seek enhanced punishment. Specifically, the Defendant complains that the State's notice contained errors in the factual detail supporting the convictions. The State responds that the Defendant received notice despite the Notice of Enhanced Punishment's factual errors and, further, that the Defendant has failed to show any prejudice as a result of the errors.

Tennessee law requires the State to provide written notice to a defendant that the State intends to seek enhanced punishment if the defendant is convicted. T.C.A. § 40-35-202(a)

(2006). The notice must be given at least ten days before trial or the acceptance of a guilty plea and should provide the types of convictions, dates of convictions, and identity of the courts of conviction. *Id*. Our Supreme Court, in *State v. Adams*, explained the purpose of this statute:

> The purpose of subsection (a) is to provide fair notice to an accused that he is exposed to other than standard sentencing. It is intended to order plea-bargaining, to inform decisions to enter a guilty plea, and to aid to some extent trial strategy. Notice is important not only in preparation for a sentencing hearing, but in evaluating the risks and charting a course of action before trial.

*State v. Adams*, 788 S.W.2d 557, 559 (Tenn. 1990). When a detail of the required information is omitted or incorrect, the inquiry should be whether the notice was "materially misleading." *Id*. The supreme court specifically held that "when the State has substantially complied . . ., an accused has a duty to inquire about an ambiguous or incomplete notice and must show prejudice to obtain relief." *Id*.

We conclude that the State substantially complied with Tennessee Code Annotated section 40-35-202(a). The State filed a notice of intent to seek enhanced punishment on July 11, 2008, more than ten days before the Defendant's trial that began on August 18, 2008, and more than two months before his sentencing hearing. The notice in the record contains the State's intent to seek enhanced punishment, sets forth the prior felony convictions, dates, and the identity of the courts of convictions. We recognize, as the Defendant contends, that there are inadequacies in that the notice provides conviction dates for some of the felonies as April 29, 1983 when, according to the judgment forms submitted at the sentencing hearing, the conviction dates were May 3, 1983. The Defendant also points out that, for the five felony convictions used by the trial court to determine the Defendant was a career offender, the identity of the courts of conviction are listed as the criminal court for Shelby County without providing the specific division.

Where, as here, the State has substantially complied with the statute, the accused has a duty to inquire about ambiguous or incomplete notice and must show prejudice to obtain relief. *Adams*, 778 S.W.2d at 559. In this case, the State's notice made the Defendant aware of its intent to seek an enhanced range of punishment. He was provided the convictions upon which the State would rely in advance of trial and, thus, was in a position to plan case strategy, including determining whether or not the Defendant was actually convicted of the crimes listed in the notice. The Defendant also had sufficient time to inquire into any ambiguities or mistakes in the document, and he failed to do so. Neither did he object to the notice's ambiguities or mistakes at the sentencing hearing. The Defendant has failed to show any prejudice arising from the errors in dates or the omission of the specific criminal

divisions in which he received the convictions.

Since the Defendant has not alleged or shown any prejudice from the asserted shortcomings in the notice, and the notice was sufficient to provide the Defendant with "fair notice," contemplated by *Adams*, that the State intended to seek enhanced punishment, he is not entitled to relief on this issue. 778 S.W.2d at 559.

## B. Judgment Forms for Prior Convictions

At the Defendant's sentencing hearing, the State introduced certified copies of the judgments for the Defendant's prior convictions. The Defendant argues these judgment forms did not comply with the requirements of Tennessee Code Annotated section 40-35-202(a), and, thus, the trial court erred when it relied upon the judgment forms in sentencing the Defendant. Additionally, the Defendant argues that the State is not entitled to the statutory presumption for the notice of intent to seek enhanced punishment listed in section 40-35-202(a) because the Defendant is charged under the name "Willie Lewis" and the name on the judgment forms is "Willie Earl Lewis."

In sentencing, the trial court is to impose a sentence within the range of punishment as determined by the Defendant's offender status. T.C.A. § 40-35-210(c) (2006). In this case, the trial court found that the Defendant was a Career Offender. To qualify as a Career Offender, the statute requires one of the following combinations of prior felony convictions:

(1) Any combination of six (6) or more Class A, B or C prior felony convictions, and the defendant's conviction offense is a Class A, B or C felony;

(2) At least three (3) Class A or any combination of four (4) Class A or Class B felony convictions if the defendant's conviction offense is a Class A or B felony; or

(3) At least six (6) prior felony convictions of any classification if the defendant's conviction offense is a Class D or E felony.

T.C.A. § 40-35-108(a) (2006).

The Defendant has five prior convictions for aggravated robbery, a Class B felony. The judgment forms describe the Defendant's aggravated robberies as "RWDW." At the sentencing hearing, the trial court found that the Defendant had five convictions for robbery with a deadly weapon and, based upon this finding, determined that the Defendant was a

Career Offender. *See* T.C.A. § 40-35-118 (2006). The Defendant argues the judgment forms' "RWDW" notation was an insufficient basis for the court to find that the Defendant had been convicted of robbery with a deadly weapon. The State's notice and the presentence report, however, both list the conviction as robbery with a deadly weapon. As the State's notice provided the nature of the conviction, robbery with a deadly weapon, we find the Defendant had sufficient notice under the statute of the State's intent to seek enhanced punishment based upon his prior convictions for robbery with a deadly weapon. As to the trial court's reliance upon the judgments that describe the Defendant's convictions as "RWDW," we conclude that the record amply supports the trial court's finding that the Defendant had five prior Class B felony convictions based upon the State's notice, the presentence report, and the judgment forms. The Defendant is not entitled to relief on this issue.

Finally, the Defendant argues that State is not entitled to the statutory presumption that he is the same defendant named in the judgment forms for the prior convictions. The relevant portion of the statute states:

> The original or certified copy of the court record of any prior felony conviction, bearing the same name as that by which the defendant is charged in the primary offense, is prima facie evidence that the defendant named therein is the same as the defendant before the court, and is prima facie evidence of the facts set out therein.

T.C.A. § 40-35-202(a). The Defendant is charged in this case under the name "Willie Lewis." The judgment forms for the five prior felony convictions bear the name "Willie Earl Lewis." Even assuming that "Willie Lewis" and "Willie Earl Lewis" are not similar enough to suffice under the statute, the State does not have to rely on the statutory presumption. Other evidence may be used to prove that the defendant is the same defendant named in the prior convictions upon which the State relies for enhanced punishment purposes. In this case, the convictions, conviction dates, and conviction numbers on the judgment forms are exactly the same as those listed on the Defendant's presentence report. These consistencies support the trial court's finding that the Defendant, "Willie Lewis," is the same as the "Willie Earl Lewis" named in the judgment forms for the prior felony convictions. The Defendant is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and the applicable law, we conclude that sufficient evidence was presented for a jury to find the Defendant guilty of aggravated robbery beyond a reasonable doubt, that the Defendant received sufficient notice of the

State's intent to seek enhanced punishment, and that the trial court correctly sentenced the Defendant. As such, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE